**Anthony S. Petru\*** (CA #97399)
petru@hmnlaw.com
**Gavin S. Barney** (OR # 163382)
barney@hmnlaw.com
HILDEBRAND MCLEOD & NELSON
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**James H. Kaster\*** (MN #53946, WI # 1001474)
kaster@nka.com
**Lindsey E. Krause\*** (MN #398431)
lkrause@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel:  (612) 256-3200
*pro hac vice motions forthcoming*

Attorneys for Plaintiff Miguel Munoz

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **MIGUEL MUNOZ,**<br><br>                    Plaintiff,<br><br>v.<br><br>**UNION PACIFIC RAILROAD COMPANY**, a Delaware corporation<br><br>                    Defendant. | Case File No.<br><br>COMPLAINT<br>DEMAND FOR JURY TRIAL |

Plaintiff Miguel Munoz, by his attorneys Hildebrand McLeod & Nelson and Nichols Kaster, PLLP, for his Complaint against Defendants states and alleges:

## PRELIMINARY STATEMENT

1. Beginning in 2014, Union Pacific began implementing company-wide changes to its fitness-for-duty program ("Fitness-for-Duty"). As a result of these changes, Union Pacific imposed a blanket requirement that employees in certain positions disclose specified health conditions – even when the condition had no impact on the employee's ability to safely perform their job. Union Pacific also imposed a policy that automatically removed the employees who disclosed these conditions from service, and subjected them to a Fitness-for-Duty evaluation, regardless of whether the employee had been safely performing the essential functions of their job. These evaluations do not assess whether an employee is physically capable of performing their job, and Union Pacific does not conduct physical examinations as a matter of course. In addition, Union Pacific routinely disregards the opinions of the employee's treating physicians. Instead, Union Pacific demands medical information from the employee and conducts a "file review," relying on this review to determine that the employee is unfit for duty, or that the employee requires work restrictions that Union Pacific then refuses to accommodate.

2. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern or practice of discrimination under the ADA. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No.

8:16-cv-381 (D. Neb.). This court certified the class in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision in March 2020.

3.     Munoz is a victim of the same discriminatory Fitness-for-Duty policies and practices as alleged in *Harris*. Despite being qualified for his job, Union Pacific removed him from service and subjected him to a Fitness-for-Duty evaluation. He was then excluded from working at Union Pacific because of his condition. Munoz was a putative class member in *Harris*, and timely brings this individual legal action.

## PARTIES

1.     Plaintiff Miguel Munoz is an individual who, at all relevant times, resided in the State of Wyoming. During the relevant time period, Munoz worked for Defendant in La Grande, Oregon.

2.     Defendant Union Pacific Railroad Company ("Union Pacific") is a corporation incorporated in the State of Delaware.

## JURISDICTION AND VENUE

3.     The Court has original jurisdiction under 28 U.S.C. § 1331, as this action arises under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1981.

4.     Munoz brings additional claims under the Oregon Human Rights Act, for which jurisdiction exists under 28 U.S.C. § 1367.

5.     Venue is proper in this District and division because a substantial part of the events and omissions giving rise to the claims occurred herein.  *See* 28 U.S.C. § 1391(b)(2).

//

# FACTUAL ALLEGATIONS

## *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

6. Union Pacific's Medical Rules, as reviewed and revised on February 1, 2014 (attached as **Exhibit A**), apply to all Union Pacific employees across the country. They outline the Fitness-for-Duty program at Union Pacific.

7. The medical rules require, among other things, that all employees in Telecom positions, Supply Department field positions, Operating Department field positions (including Transportation, Engineering Services and Mechanical positions), and Dispatcher positions disclose "any new diagnosis, recent events, and/or change in the following conditions"—which Union Pacific label "Reportable Health Events":

A. **Cardiovascular Conditions including:**
   1. Heart attack (myocardial infarction) that is confirmed or was suspected(including any Emergency Room or hospital care for chest pain or other symptoms of possible heart disease).
   2. Cardiac arrest, requiring cardio-pulmonary resuscitation (CPR) or use of a defibrillator.
   3. Serious cardiac arrhythmias (abnormal heart rhythm) requiring medical treatment.
   4. Stroke or Transient Ischemic Attack (TIA).
   5. Bleeding inside the skull (intracranial) or bleeding inside the brain (intracerebral).
   6. Heart surgery or invasive cardiovascular procedures (including coronary bypass graft, cardiac catheterization or angioplasty, or placement of a pacemaker, stent, internal cardiac defibrillator, heart valve or aortic artery graft).

B. **Seizure or Loss of Consciousness including:**
   1. A seizure of any kind.
   2. Diagnosis of epilepsy (a condition with risk for recurrent seizures).
   3. Treatment with anti-seizure medication to prevent seizures.
   4. Loss of consciousness (of any duration including episode caused by insulin reaction).

**C. Significant Vision or Hearing Change including:**
1. Significant vision change in one or both eyes affecting visual acuity (if not correctable to 20/40), color vision or peripheral vision (including visual field loss from retinal disease or treatment).
2. Eye surgery (including for glaucoma, cataracts, or laser treatment of the cornea or retina).
3. Significant hearing loss or surgery on the inner ear.
4. New use of hearing aids.

**D. Diabetes Treated with Insulin:**
1. Including Type I and Type II Diabetes Mellitus if insulin is used.
2. Severe hypoglycemic event (defined as a hypoglycemic event with: (a) loss of consciousness, (b) substantial mental confusion, drowsiness, or weakness, or (c) requiring the assistance of another person).

**E. Severe Sleep Apnea:**
1. Diagnosis or treatment of severe obstructive sleep apnea (using CPAP or other treatments).

(**Exhibit A**.)

8. Employees who disclose one of these health conditions are required by the Medical Rules to undergo a Fitness-for-Duty evaluation, regardless of whether the condition or treatment affects their ability to perform their jobs. (**Exhibit A**.)

9. Specifically, the employee must:

**Stay off work** (not to report to work or mark up for work) until Health and Medical Services has completed a Fitness-for-Duty evaluation for that particular health event and has provided the employee's Supervisor with notification that the employee is fit for duty and able to return to his/her job.

**Notify his/her Supervisor** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty determination prior to the employee being able to work.

**Notify Health and Medical Services** that he/she has had a Reportable Health Event that requires Health and Medical Services to complete a Fitness-for-Duty evaluation.

(**Exhibit A**.)

10. Under the Medical Rules, Fitness-for-Duty evaluations are automatic for an employee who transfers "from an existing Union Pacific job assignment to a different job assignment outside of the provisions of the collective bargaining agreement . . . (a) [t]o a Dispatcher position or an Operating Department field position (including all Transportation, Engineering Services, and Mechanical position – agreement and nonagreement), and/or (b) [t]o a position requiring regulatory certification, and/or (c) [t]o other selected positions, where it is determined that a Job Transfer Evaluation is needed, based on physical and functional requirements of the job." (**Exhibit A**.)

11. These Fitness-for-Duty evaluations are not individualized assessments of the employee's ability to safely perform the essential functions of the employee's job.

12. Union Pacific does not physically examine the employee, and routinely disregards the opinions of the employee's treating doctor who *has* physically examined the employee.

13. Once Union Pacific receives the medical information, Union Pacific's HMS Department, located in Omaha, Nebraska and at the time headed by Chief Medical Officer Dr. John Holland, conducts a "file review" and issues a Fitness-for-Duty determination that the employee is either fit for duty, fit for duty with restrictions, or unfit for duty.

14. Union Pacific's HMS Department routinely issues Fitness-for-Duty determinations that disqualify employees from their positions on the basis of their disabilities, even though the disabilities do not affect the employee's ability to safely perform the essential functions of their jobs.

15. When issuing these Fitness-for-Duty determinations, the HMS department relies on standardized protocols for employees with certain health conditions or treatments.

16. For example, the HMS Department labels employees with a broad range of health conditions as "sudden incapacitation" risks and issues them standard work restrictions that prohibit the employees from: (1) operating company vehicles; (2) working on or near moving trains; (3) operating cranes, hoists, or machinery; and (4) working at unprotected heights over four feet above the ground.

17. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been forced to disclose sensitive medical information, stay off work without pay, and many have lost their livelihoods.

### *PLAINTIFF MIGUEL MUNOZ*

18. Munoz began working for Union Pacific on or around September 10, 1982, and worked most recently as a Track Machine Operator in La Grande, Oregon.

19. Munoz is Latino and immigrated to the United States from Mexico as a teenager.

20. While working at Union Pacific, Munoz experienced harassment and other negative treatment on account of his race and ethnicity. For example, sometimes his gang supervisor would make comments like, "If you don't like the job, you can go back to Mexico."

21. On or about May 18, 2017, Munoz was approached by his manager, Joe Morgan, who accused Miguel of having vision issues. This surprised Munoz, as he had

never had any issues with his vision before, nor did he believe he was then-currently having any issues. Morgan then initiated a Fitness-for-Duty review for Munoz, per Union Pacific policy.

22. On or about May 22, 2017, Munoz visited his personal eye doctor, who cleared him to work and disputed that Munoz had any issues with his vision. Munoz's primary physician communicated to Union Pacific that Munoz's vision was normal.

23. Despite this, Union Pacific sent Munoz to an ophthalmologist of its choosing in Salt Lake City, Dr. Akbar Shakoor, on July 3, 2017. At the appointment, Dr. Shakoor told Munoz that his vision was normal. Subsequently, Dr. Shakoor wrote a letter confirming that Munoz was able to return to work without restrictions.

24. On July 10, 2017, Union Pacific sent Munoz to Dr. Kurt Hegmann, an occupational medicine specialist in Salt Lake City. Dr. Hegmann performed an examination, which included testing Munoz's memory and cognition. Dr. Hegmann asked Munoz to name all U.S. Presidents in reverse order, and count backwards from 100 by sevens.

25. English is Munoz's second language and he has a limited educational background, neither of which impacted his ability to successfully perform his job for decades. Munoz indicated to Dr. Hegmann that he had only achieved a sixth-grade education level in Mexico.

26. In a letter written thereafter, Dr. Hegmann confirmed that Munoz's vision was tested as normal, apart from a diagnosis of strabismus. However, Dr. Hegmann indicated that he believed Munoz had "impaired cognitive function," but recognized that it

was "somewhat unclear how significant [it] is in part because of [Munoz's] education in Mexico.

27. Dr. Hegmann ultimately concluded that Mr. Munoz "fail[ed] a mini mental status evaluation," and that "more detailed testing [was] certainly in order[.]"

28. Munoz's personal doctors have never diagnosed him with any cognitive or other mental deficiencies.

29. Teresa Rodino, an occupational health nurse with Union Pacific, thereafter contacted Munoz and told him that a subsequent mental evaluation was needed. Munoz never received any follow-up from Rodino or anyone else at Union Pacific regarding this subsequent evaluation and, to-date, has not been evaluated again.

30. On October 6, 2017, Union Pacific issued Munoz two restrictions: (1) Operation of company vehicles/on-track or mobile equipment/forklifts – Prohibited; and (2) Operation of cranes, hoists, or machinery – Prohibited. Upon information and belief, these restrictions were issued, at least in part, based on Dr. Hegmann's evaluation.

31. Union Pacific subsequently told Munoz that his restrictions could not be accommodated.

32. On February 19, 2016, counsel for Munoz, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

33. Because he was a putative class member in the *Harris* case, Munoz's claims under the ADA had been subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

34. This court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

35. As a result of *Crown Cork* tolling, Munoz had three hundred (300) days from the date of the Eighth Circuit's order to file a Charge of Discrimination with the EEOC. Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the statute of limitations for Munoz's and other putative class members' claims by an additional sixty (60) days.

36. Munoz timely filed a Charge of Discrimination with the EEOC on or about March 12, 2020. The EEOC issued a Right to Sue notice on November 17, 2020. Munoz timely initiates this lawsuit.

### FIRST CLAIM FOR RELIEF
**Disability Discrimination
In Violation of the ADA**

37. Munoz incorporates the foregoing paragraphs by reference.

38. Munoz is disabled within the meaning of the ADA because, without limitation, Union Pacific regarded him as such by determining he has a cognitive impairment.

39. Munoz is a qualified individual within the meaning of the ADA.

40. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

41. Union Pacific discriminated against Munoz on the basis of disability when it issued him work restrictions, removed him from his job, and refused to allow him to return to it.

42. Because Union Pacific violated 42 U.S.C. § 12112, Munoz has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Munoz is also entitled to attorneys' fees and costs incurred in connection with these claims.

43. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Munoz's rights and safety. As a result, Munoz is entitled to punitive damages.

### SECOND CLAIM FOR RELIEF
### Unlawful Screening
### In Violation of the ADA

44. Munoz incorporates the foregoing paragraphs by reference.

45. Munoz is disabled within the meaning of the ADA because, without limitation, Union Pacific regarded him as such by determining he has a cognitive impairment.

46. Munoz is a qualified individual within the meaning of the ADA.

47. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

48. Section 12112(b)(6) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including" using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]"

49. Union Pacific discriminated against Munoz on the basis of disability by imposing selection criteria, including medical screening, that screens out, tends to screen out, or has a disparate impact on individuals who disclose disabilities.

50. Because Union Pacific violated 42 U.S.C. § 12112, Munoz has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Munoz is also entitled to attorneys' fees and costs incurred in connection with these claims.

51. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Munoz's rights and safety. As a result, Munoz is entitled to punitive damages.

## THIRD CLAIM FOR RELIEF
### Disability Discrimination
### In Violation of Oregon Statute § 659A.112

52. Munoz incorporates the foregoing paragraphs of by reference.

53. Oregon Statute § 659A.112 provides that it is an unlawful employment practice for an employer "to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms conditions or privileges of employment on the basis of disability."

54. Munoz is an employee and Defendant is his employer for purposes of § 659A.112.

55. Defendant's conduct described herein violated Oregon Statute § 659A.112.

56. As a result of Defendant's unlawful conduct, Munoz has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages. He is also entitled to attorneys' fees and costs incurred in connection with this claim.

57. Defendant committed the above-alleged facts with malice, reckless disregard, or deliberate disregard for Munoz's rights and safety. As a result, he is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Miguel Munoz prays for the following relief against Defendant Union Pacific Railroad Company:

A. Entry of judgment in favor of Munoz against Defendant on all claims for relief;

B. For all relief available under the Americans with Disabilities Act, as amended, 42 U.S.C. § 1981, and the Oregon Human Rights Act, including past and future wages, emotional distress, liquidated damages, and punitive damages;

C. All legal and equitable relief available on Munoz's claims in an amount exceeding $75,000;

D. Costs, disbursements, and attorney's fees;

E. Prejudgment interest; and

F. All such other relief as the Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Miguel Munoz demands a jury trial for all issues so triable.


Date: February 3, 2021

s/     *Gavin Barney*
**HILDEBRAND MCLEOD & NELSON**
**Anthony S Petru** (CA #97399)
petru@hmnlaw.com
**Gavin Barney** (OR # 163382)
Email: barney@hmnlaw.com
250 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**NICHOLS KASTER, PLLP**
**James H. Kaster**, *pro hac vice forthcoming*
Email: kaster@nka.com
**Lindsey E. Krause**, *pro hac vice forthcoming*
Email: lkrause@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, Minnesota 55402-2242
Tel: (612) 256-3200

Attorneys for Plaintiff Miguel Munoz