IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| MIGUEL MUNOZ, | Civ. No. 2:21-cv-00186-SU |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant. | |

_____

SULLIVAN, Magistrate Judge.

This disability discrimination case comes before the Court on a discovery dispute concerning the application of a protective order issued in prior class action litigation between the parties in the District of Nebraska, *Quinton Harris et al v. Union Pacific Railroad Company*, Case No. 8:16-cv-00381.  ECF Nos. 26, 28, 32, 33.  The Court concludes that Plaintiff's proposed use of discovery material from the *Harris* case is consistent with the terms of *Harris* protective order and so Defendant's Motion to Prohibit Use of Documents, ECF No. 28, is DENIED.

## BACKGROUND

In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, "alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern or practice of discrimination under the ADA."  Compl.

¶ 2.  ECF No. 1.  This class action suit was originally filed in the Western District of Washington

but was transferred to the District of Nebraska as *Quinton Harris et al. v. Union Pacific Railroad*

*Company*, Case No. 8:16-cv-00381.  *Id.* at ¶¶ 2, 32.  The Nebraska district court certified the *Harris*

class in February 2019.  *Id.* at ¶ 34.  The Eighth Circuit Court of Appeals reversed the certification

decision in March 2020.  *Id.*  Plaintiff alleges that he was part of the putative class in *Harris* and,

following decertification, Plaintiff brought this individual action for disability discrimination in

the District of Oregon.

 During litigation in *Harris*, the parties stipulated to a joint protective order on December

12, 2016.  Balus Decl. Ex. 1.  ECF No. 29.  The parties engaged in more than 18 months of

discovery, ending in July 2018, during which time the parties took over thirty depositions and

Union Pacific produced over 400,000 pages of documents.  Delbridge Decl. ¶¶ 3, 4.  In the course

of discovery, the *Harris* plaintiffs propounded an interrogatory seeking the identities of all putative

class members.  *Id.* at ¶ 5.  In response, Union Pacific produced a list of 7,723 employees, including

Plaintiff.  *Id.*

## DISCUSSION

 The dispute before the Court concerns whether Plaintiff is permitted to use materials

produced pursuant to the *Harris* protective order in the present case.  The logical starting point to

this inquiry is language of the *Harris* protective order itself, which provides in relevant part:

> However, notwithstanding anything to the contrary herein, if any putative class
> member(s) bring any separate litigation following a denial of class certification or
> decertification of this action, confidential documents produced in this action may
> be used by the parties to that action who are represented by same legal counsel
> representing the parties in this action.  The use of such documents in such putative
> class member(s) separate litigation shall be subject to the terms and conditions of
> this Order.

Balus Decl. Ex. 1, at 4.

Union Pacific asserts that Plaintiff's proposed use of *Harris* materials is contrary to the terms of the protective order because (1) Plaintiff was not properly a member of the putative class in *Harris* and (2) only Plaintiff is represented by the same counsel as in *Harris*, while Union Pacific is represented by different counsel.

## I.      Membership in the Putative Class

In *Harris*, the plaintiffs brought their case on behalf of a putative class defined in their First Amended Complaint as:

> Individuals who were removed from service over their objection and/or suffered another adverse employment action during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Delbridge Decl. Ex. 1, at 17.

As previously noted, the *Harris* plaintiffs propounded an interrogatory seeking a list of all putative class members.  Delbridge Decl. ¶ 5.  In response, Union Pacific produced a list of 7,723 employees.  *Id.*  Plaintiff was included in that list.  *Id.*

On February 5, 2019, the Nebraska district court certified a class consisting of: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action."  Rowinski Decl. Ex. 3, at 19.  ECF No. 30.

Union Pacific argues Plaintiff was not a member of the putative class in *Harris* because he was not subject to a fitness-for-duty examination as a result of a reportable health event.  Union Pacific made the same argument in another post-decertification individual action brought by a member of the putative *Harris* class, *Campbell v. Union Pacific Railroad Co.*, Case No. 4:18-cv-00522-BLW, 2021 WL 1341037 (D. Idaho April 9, 2021), which was rejected by the district court:

Both parties agree that Campbell's name was on the class list that that the named [*Harris*] plaintiffs relied upon in seeking and initially prevailing on class certification, however Union Pacific argues that Campbell was not a putative class member because he was not subject to a fitness for duty examination as a result of a reportable health event.  Campbell objects, arguing that the theory of what bound the *Harris* class together was the policy and not the specific medical condition that prompted the fitness for duty evaluation.  The Court is not persuaded that Campbell is not a putative class member.  At least two of the named plaintiffs in *Harris*, Zinn and Baker, were subjected to a fitness for duty evaluation for conditions that do not appear in Union Pacific's definition of a "reportable health event."  Further, the policy itself states that "[s]upervisor's have the ability to request a Fitness-for-Duty evaluation based on credible information which raises a concern about the employee's ability to safely perform his/her job duties."  This is the exact reason that Campbell was required to participate in in a fitness for duty evaluation.  Therefore, the Court finds that Campbell is a putative class member and falls into the exception of the protective order of those who may use documents designated as confidential in the *Harris* class action.

*Id.* at *5 (internal citations omitted).

The Court finds the reasoning of *Campbell* especially persuasive, given the case's close factual similarity with Plaintiff's claims in the present action.  Accordingly, the Court concludes that Plaintiff was likewise a member of the putative class in *Harris* and is therefore permitted to use the confidential documents produced pursuant to the *Harris* protective order.

## II.    Identity of Counsel

Union Pacific's second argument concerns the protective order's requirement that there be an identity of counsel in subsequent individual actions following decertification.  As previously noted, the *Harris* protective order provides that "confidential documents produced in this action may be used by the parties to that action who are represented by same legal counsel representing the parties in this action."  Balus Decl. Ex. 1, at 4.

The parties agree that Plaintiff is represented by the same counsel in this action as represented the putative class in *Harris*.  Union Pacific, however, is represented by different

counsel and argues that the exclusion clause requires both the plaintiff and the defendant in a subsequent action be represented by the same attorneys who represented them in *Harris*.

In support of this argument, Union Pacific points to the use of the plural "parties" in the *Harris* protective order exclusion clause, without any limiting articles. The Court is not convinced. In a putative class action there are, by definition, many plaintiffs and so it would be confusing to use the singular "party" to describe the plaintiffs in subsequent actions. More to the point, the critical term of the exclusion clause is "used by the parties to that [subsequent] action," which is qualified by the limitation "who are represented by same legal counsel representing the parties" in *Harris*. By its plain terms, therefore, the limitation requiring identity of counsel only applies to parties seeking to use the *Harris* materials, which in this case is Plaintiff.

From a purely practical standpoint, adopting Union Pacific's interpretation would render the exclusion meaningless because it would allow Union Pacific to unilaterally deprive its opposing counsel of access to the *Harris* materials in a subsequent action by the simple expedient of changing its own attorneys. Union Pacific's preferred interpretation would also require the plaintiff in a subsequent action to engage in a duplicative and wasteful course of discovery to seek materials already in his possession but which he would be barred from using because Union Pacific opted to retain different attorneys. This is contrary both to policy and to the plain meaning and purpose of the protective order's exclusion clause.

## CONCLUSION

Defendant's Motion to Prohibit Use of Documents Produced Pursuant to the *Harris* Protective Order, ECF No. 28, is DENIED.  Plaintiff shall be permitted to use materials produced pursuant to the protective order in *Quinton Harris et al v. Union Pacific Railroad Company*, Case No. 8:16-cv-00381 in the present case.

It is so ORDERED and DATED this ___16th___ day of August 2021.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge